IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN BARAJAS,<br><br>Plaintiff,<br><br>v.<br><br>ASHFORD TRS WALNUT CREEK LLC,<br><br>Defendant. | Case No. 20-cv-01676-CRB<br><br>**ORDER DENYING MOTION TO DISMISS** |

Plaintiff Kathleen Barajas has cerebral palsy and uses a wheelchair. See FAC (dkt. 28) ¶ 1. She is suing Defendants Ashford TRS Walnut Creek LLC, owner of an Embassy Suites Hotel in Walnut Creek, California (Hotel), and Does 1–10 (collectively, Ashford TRS). See id. Barajas alleges that multiple features of the "accessible" room that Barajas booked were inaccessible, that the Hotel's service counter is inaccessible, and that the Hotel's reservation website fails to reasonably identify accessible accommodation features, in violation of both the federal Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act (Unruh Act). See generally id. Ashford TRS has moved to dismiss all claims for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted. See MTD FAC (dkt. 30-1).

The Court determines that there is no need for oral argument. The Court denies Ashford TRS's motion to dismiss.

**I.  BACKGROUND**

Barajas is a California resident with physical disabilities who relies on a wheelchair for mobility. FAC ¶ 1. She booked an "accessible" room at the Hotel and stayed there for several days in December 2018. Id. ¶ 10. Barajas alleges that her room, the sales counter, and the website reservation system were not accessible. See id.

### A. Room

Barajas alleges that the designated accessible room was not accessible for four reasons. First, Barajas had difficulty opening the door to the guestroom, and the pressure required to open the door was measured at 14 pounds. FAC ¶ 15–16. Second, the 6-inch ramp from the bedroom into the bathroom had a 24.2% gradient. Id. ¶ 17.[1] Third, a storage shelf in the closet was 69 inches high and had an obstruction underneath. FAC ¶ 19. Fourth, there were no grab bars at the toilet, and Barajas fell while attempting to use the toilet as a result. Id. ¶ 20.

### B. Sales Counter

Barajas also alleges that the check-in counter was not sufficiently accessible and remains so. Although there was a lowered section of the counter at an accessible height, that section was so covered by signs, pamphlets, and newspapers that it was rendered unusable. Id. ¶ 11. And an investigation confirmed that this is the Hotel's ongoing practice. Id. ¶ 12.

### C. Website

Barajas alleges that the website does not sufficiently identify or describe accessibility features. Id. ¶ 27. The only information provided about the accessible roll-in shower room is that it has a roll-in shower. Id. ¶ 28. Barajas requires more information to determine if a room is appropriate for her needs. Id. ¶ 27.

### D. Future Visits

Barajas alleges that she will return to the Walnut Creek area on "numerous future occasions." Id. ¶ 30. She provides no definitive plans for a return visit, but states that she will "use the hotel's website reservation system to book a room and travel to the hotel when it has been represented to her that the hotel's website reservation system is accessible." Id. ¶ 31. The purpose of Barajas's return visit would be to assess ADA compliance and "see her lawsuit through" to its conclusion. Id. ¶ 32.

### E. Procedural History

Ashford TRS moved to dismiss Barajas's initial complaint for lack of jurisdiction. See

---

[1] Barajas also alleged that a sink in the hotel room had no knee clearance, FAC ¶ 18, but withdrew this allegation in her opposition to Ashford TRS's motion to dismiss, Opp. (dkt. 35) at 5.

2

generally MTD Compl. (dkt. 22-1). On April 2, 2021, Barajas filed an amended complaint. See generally FAC. Based on the above-described allegations, Barajas asserts claims under the ADA and the Unruh Act. See id. at 9–11. She seeks injunctive relief and equitable nominal damages under the ADA and statutory damages under the Unruh Act. See id. at 11. Ashford TRS has moved to dismiss. See MTD FAC.

## II. LEGAL STANDARD

"The doctrine of standing limits federal judicial power." Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1108 (9th Cir. 2003). The question of whether plaintiffs have standing "precedes, and does not require, analysis of the merits." Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). To have standing, plaintiffs must establish (1) that they have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and (3) that their injury would likely be redressed by a favorable decision. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Each of these elements must be supported "with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561. And plaintiffs "must have standing to seek each form of relief requested in the complaint." Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of standing and thus lack of subject matter jurisdiction. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Rule 12(b)(1) attacks on standing can be either facial, confining the court's inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. Id.; Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). For facial attacks, courts accept the jurisdictional allegations in the complaint as true. See, e.g., Whisnant v. U.S., 400 F.3d 1177, 1179 (9th Cir. 2005). When addressing a factual attack, however, courts may consider evidence like declarations submitted by the parties, and the party opposing the motion to dismiss has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. See, e.g., Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014);

Polanski v. KLM Royal Dutch Airlines, 378 F. Supp. 2d 1222, 1228 (S.D. Cal. 2005).[2]

If the Court has jurisdiction to address the merits, a complaint may nonetheless be dismissed for failure to state a claim for which relief may be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When evaluating a Rule 12(b)(6) motion, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). But conclusory allegations amounting only to "formulaic recitation of the elements" are not entitled to an assumption of truth. See Iqbal, 556 U.S. at 681 (quoting Twombly, 550 U.S. at 555). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007).

## III. DISCUSSION

Ashford TRS argues that the Court should dismiss Barajas's ADA and Unruh Act claims because Barajas lacks standing and has failed to state a claim for which relief may be granted. The Court denies Ashford TRS's motion to dismiss.[3]

---

[2] The Court notes some tension between Lujan's statement that the elements of standing need only be supported by "the manner and degree of evidence required at the successive stages of the litigation," 504 U.S. at 561, and the Ninth Circuit's rule permitting "factual" attacks on standing at the motion to dismiss stage, see White, 227 F.3d at 1242. But the Court is bound by Ninth Circuit precedent.

[3] Ashford TRS requests that the Court take judicial notice of (1) screenshots of the relevant pages of Ashford TRS's Hotel reservation website, and (2) Barajas's litigation history. See Request for Judicial Notice ("RJN") (dkt. 30-2). Barajas references the Hotel website in her complaint, see FAC ¶¶ 27–29, 31–32, 43, and the website's accuracy cannot reasonably be questioned, see Fed. R. Civ. P. 201(b)(2). Therefore, the Court grants Ashford TRS's request for judicial notice of the screenshots of Ashford TRS's Hotel website. The Court denies Ashford TRS's request for judicial notice of Barajas's litigation record because it is irrelevant.

4

### A. Standing

Barajas seeks an injunction requiring Ashford TRS to comply with the ADA and the Unruh Act, equitable nominal damages, statutory damages under the Unruh Act, and attorneys' fees and costs. See FAC at 11–12.

Ashford TRS factually attacks Barajas's standing to pursue these remedies, contending that Barajas has not adequately established an injury in fact that is fairly traceable to Ashford TRS's conduct. MTD FAC at 6–8. Although Ashford TRS asserts only a factual attack on jurisdiction, "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing." Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks omitted). The Court concludes that Barajas's complaint establishes the elements of standing as to each form of relief that Barajas seeks, and that Ashford TRS's factual attack fails.

#### 1. Injury in Fact

To show an "injury in fact," plaintiffs must establish "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (citations and internal quotation marks omitted). When a party seeks nominal damages, the party must show that they suffered a past harm. Uzuegbunam v. Preczewski, 141 S. Ct. 792, 797 (2021) (holding that a plaintiff who has established an injury in fact and causation can establish redressability by requesting only nominal damages). But where, as here, a party seeks injunctive relief, "past wrongs do not in themselves amount to [the] real and immediate threat of injury" necessary for standing. City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983). Rather, parties must show "continuing, present adverse effects" of the defendants' actions. Id. at 102.

"A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility." Civ. Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust, 867 F.3d 1093, 1098 (9th Cir. 2017). A plaintiff can establish these effects "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 944 (9th Cir. 2011). "So long as the discriminatory conditions continue, and so long as a plaintiff

5

is aware of them and remains deterred, the injury under the ADA continues." Id. at 1099 (quoting Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1137 (9th Cir. 2002)) (internal quotations omitted). However, plaintiffs lack standing to pursue injunctive relief if they are indifferent to returning, their intent to return is not genuine, or the barriers are not relevant to their disability. Id. at 953. Because the deterrent effect doctrine does not require more than an allegation that a plaintiff was deterred from returning, the Ninth Circuit has held that a plaintiff's vague allegations that they intended to visit a facility, are deterred by the facility's non-compliance, and would visit when non-compliance is cured are sufficient to establish standing. See, e.g., Civ. Rights Educ. & Enf't Ctr., 867 F.3d at 1099; Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 840–41 (9th Cir. 2007); Velez v. Il Fornaio (Am.) Corp., 808 F. App'x 581, 582 (9th Cir. 2020); Whitaker v. Pan. Joes Inv'rs LLC, 840 F. App'x 961, 963–64 (9th Cir. 2021).

Alternatively, a plaintiff can establish the continuing effects necessary for an injury in fact by alleging "an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008). Although plaintiffs must allege more than a hypothetical "'some day' intention[]" to return, Lujan, 504 U.S. at 564, the Ninth Circuit has held that the motivation underlying an intent to return is irrelevant, Civ. Rights Educ. & Enf. Ctr., 867 F.3d at 1102. Accordingly, ADA testers have standing, even if their sole purpose in visiting an establishment is to assess it for ADA compliance. Id. at 1101.

Barajas's allegations establish both past and ongoing injuries. Barajas has allegedly encountered ADA violations interfering with her access to an accommodation, at least one of which is ongoing based on follow-up "investigations." FAC ¶¶ 12, 21. She has also sufficiently connected these alleged violations to her disability, which requires her to use a wheelchair. These violations are concrete invasions of legally protected interests, and thus establish a past injury in fact that gives Barajas standing to pursue nominal damages. With respect to injunctive relief, Barajas's allegations that she travels frequently and will return to Walnut Creek, FAC ¶ 30, are admittedly vague, and she has not explained her preference for Ashford TRS's hotel specifically. Still, her allegations are nearly identical to those that the Ninth Circuit has approved when

evaluating claims brought by ADA testers. Therefore, the Court holds that Barajas has sufficiently pleaded an injury in fact.

### 2. Causation

Standing also requires that a plaintiff's injury is traceable to the defendant's conduct. When pleading, a plaintiff does not need to show proximate causation, but just needs to demonstrate that their injury in fact is "fairly traceable" to the challenged action. Daniel v. Nat'l Park Serv., 891 F.3d 762, 767 (9th Cir. 2018). Barajas has met this burden because she alleges that her injury resulted from the Hotel's noncompliance with ADA regulations.

### 3. Redressability

Ashford TRS does not dispute that the Court could grant relief that redresses Barajas's injuries.[4] Therefore, the Court holds that Barajas has facially established standing, and examines whether Ashford TRS has successfully factually attacked Barajas's standing to sue.

### 4. Factual Attack

Ashford TRS factually attacks Barajas's allegations regarding injury in fact and causation. Specifically, Ashford TRS alleges that Barajas did not book an accessible room, and thus was not provided with an accessible room. MTD FAC at 5–6. Ashford TRS alleges that the Hotel has accessible rooms, such that there is no ongoing injury and Barajas caused her own injury. Id. Similarly, Ashford TRS alleges that Barajas caused her own injury by failing to notify the Hotel of her room's accessibility shortcomings. MTD FAC at 8. Ashford TRS alleges that had Barajas simply contacted the staff, she would have been relocated to one of their accessible rooms. Id.

Once one party raises a factual attack, the other party bears the burden of supporting their allegations with "competent proof," Hertz Corp. v. Friend, 559 U.S. 77, 96–97 (2010), with the same evidentiary standard as would be required at summary judgment, Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized

---

[4] Although not cast in terms of redressability, Ashford TRS's assertion that it has ADA-compliant rooms might imply that injunctive relief would serve no purpose. But that assertion is factual and (as discussed below) intertwined with the merits. It is not enough to defeat Barajas's standing at this stage.

allegations of fact deemed supportive of plaintiff's standing." Warth, 422 U.S. at 501. Thus, a court can review evidence beyond that in the complaint without converting a motion to dismiss into a motion for summary judgment. White, 227 F.3d at 1242. A court may also resolve disputed factual issues itself to determine if jurisdiction exists. Leite, 749 F.3d at 1121–22.

Factual attacks on jurisdiction are inappropriate in certain circumstances, however. The Ninth Circuit has held that although a court "may, in certain instances, decide genuinely disputed factual issues relating to jurisdiction prior to trial[,] . . . [j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." Sun Valley Gas., Inc. v. Ernst Enters., 711 F.2d 138, 139 (9th Cir. 1983) (quoting Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983)). In cases with intertwined jurisdictional and substantive issues, "a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous." Thornhill Publ'g Co. v. Gen. Tel. Co., 594 F.2d 730, 734 (9th Cir. 1979).

Ashford TRS's factual attack fails because the factual questions relevant to injury in fact and causation are intertwined with the merits. The Hotel is arguing, in essence, that it did not violate (and does not violate) the ADA because it has accessible rooms. The Hotel suggests that Barajas's injuries were thus caused by simple human error by the Hotel's employees and/or Barajas, not any ADA violations.

Because these factual arguments are intertwined with the merits, Ashford TRS's factual attack is inappropriate at this stage. Sun Valley Gas., Inc., 711 F.2d at 139. Later in this litigation, Ashford TRS may be able to raise similar arguments regarding whether Barajas has established standing "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. But for now, it would be premature for the Court to express any view of those arguments.

*

Therefore, the Court holds that Barajas has established standing and denies Ashford TRS's

1  motion to dismiss for lack of standing.[5]

   **B.  Merits**

   **1.  ADA Claims**

Ashford TRS argues that Barajas has failed to state a claim for which relief may be granted based on the slope of the ramp to the roll-in shower, the height of the closet shelf, the service counter, and the website reservation system. The Court disagrees.

**a.  Relevant Statutes, Regulations, and Agency Guidance**

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" unless the modification would fundamentally alter the nature of the facility, 42 U.S.C. § 12182(b)(2)(A)(ii), and "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv). Furthermore, a "failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities" constitutes discrimination under the ADA. 42 U.S.C. § 12183(a)(2).

To state a claim under the ADA, a "plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). "The third element is satisfied when there is a violation of applicable accessibility standards." Rodriguez v. Barrita, Inc., 10 F. Supp. 3d 1062, 1073 (N.D. Cal. 2014).

Regulations implementing the ADA establish accessibility standards. 28 C.F.R. §

---

[5] The Court has federal question jurisdiction over Barajas's ADA claim, see 28 U.S.C. § 1331, and can exercise supplemental jurisdiction over the related state law claim, see 28 U.S.C. § 1367.

9

36.211(a) states: "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." Id.

The ADA Accessibility Guidelines (ADAAG), created in 2004 and updated in 2010, also establish accessibility standards. Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011). These guidelines provide precise and thorough structural requirements for places of public accommodation. Id. And "'obedience to the spirit of the ADA' does not excuse noncompliance with the ADAAG's requirements." Id. (quoting Long v. Coast Resorts, Inc., 267 F.3d 918, 923 (9th Cir. 2001)). But there is one exception. After Congress enacted the ADA in 1990, the DOJ created the 1991 ADA Standards for Accessible Design (1991 Standards). Today, a "Safe Harbor" provision exempts facilities constructed in accordance with the 1991 Standard from being required to retrofit elements to comply to changes in the 2010 Standards. 28 C.F.R. § 35.151(b)(4)(ii)(C).

### b. Application to the Hotel's Guestroom

Barajas alleges four ADA violations within the guestroom: (1) excessive pressure required to open the door, (2) an overly steep path of travel (ramp) from the bedroom to the bathroom, (3) a too-high closet shelf, and (4) a lack of grab bars by the toilet. FAC ¶¶ 15, 17–20. Ashford TRS does not dispute that Barajas has stated ADA claims based on the first and fourth alleged violations. And the Court rejects Ashford TRS's argument that Barajas has failed to state claims based on the ramp path of travel and the closet shelf.

#### i. Path of Travel

The 2010 ADAAG specifies requirements for ramps. Ramps may not have a running slope steeper than 1:8, which equals a gradient of 12.5%. ADAAG Table 405.2. Barajas contends that the gradient of the ramp between the bedroom and bathroom was 24.2%. FAC ¶ 17. Ashford TRS argues that the ramp is a roll-in shower threshold, which has different requirements than an inter-room ramp. See ADAAG § 608.7. However, the ramp in question is not a shower threshold, but a ramp between the bedroom and the bathroom. FAC ¶ 17. Therefore, Section 405 of the ADAAG, which applies to ramps, not thresholds, governs, and Barajas has sufficiently pleaded an

10

ADA violation based on the ramp.

### ii. Closet Shelf

The ADAAG lists requirements for storage elements, which include closets. All accessible spaces, including transient lodging guestrooms, must comply with these requirements. ADAAG Advisory § 806.2 ("The requirements in Section 806.2 do not include requirements that are common to all accessible spaces. For example, closets in guest rooms must comply with the applicable provisions for storage specified in scoping."). In terms of height, "[s]torage elements shall comply with at least one of the reach ranges specified in [Section] 308." ADAAG § 811.3. Under Section 308, A forward reach, either unobstructed or obstructed, can be a maximum of 48 inches high. ADAAG §§ 308.2.1–308.2.2.

Barajas alleges that the closet shelf in her room was higher than that, at 69 inches. FAC ¶ 19. Ashford TRS notes that the ADAAG does not specifically mention the height of closet rods. MTD FAC at 4. But Barajas's allegations are about a shelf, not a rod. FAC ¶ 19. Therefore, the Court holds that Barajas has adequately pleaded an ADA violation based on the closet shelf.

### c. Application to the Hotel's Service Counter

Under the ADAAG, sales and service counters must have accessible portions. These counters must either allow for a parallel approach, where a portion of the counter surface must be 36 inches long minimum and 36 inches high maximum, ADAAG § 904.4.1, or a forward approach, where a portion of the counter surface must be 30 inches long minimum and 36 inches high maximum, with knee and toe space underneath the counter, ADAAG § 904.4.2. The accessible portions of a countertop must be the same depth as the sales or service countertop. ADAAG § 904.4.

Although neither the Ninth Circuit nor the ADAAG have expressly required that a counter include at least some usable space, the purpose of the ADA and the ADAAG, along with common sense, suggest as much. Legislative and administrative documents indicate that ADAAG's purpose is to mandate usable accessible spaces. See 28 C.F.R. § 36.211(a) ("A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by

the Act or this part."). In unpublished opinions, the Ninth Circuit has held that if an accessible counter is at the appropriate height, it does not need to include a full 36 inches of usable space. Johnson v. Starbucks Corp., 818 Fed. App'x 657, 659–60 (9th Cir. June 17, 2020); Kong v. Mana Inv. Co., LLC, 818 Fed. App'x 660, 662–63 (9th Cir. June 17, 2020); Lindsay v. Starbucks Corp., 815 Fed. App'x 152, 155–56 (9th Cir. June 17, 2020). But these holdings do not indicate that it is permissible for a counter to be covered in materials such that it lacks any usable space. Such a counter would not be "accessible." From the perspective of a disabled person, the counter may as well not exist.

DOJ guidance also suggests that a counter covered with materials and thus rendered unusable violates the ADA. When promulgating the 2010 Standards, the DOJ stated in a response to a comment: "It is not sufficient for a building or other feature to be built in compliance with the ADA, only to be blocked or changed later so that it is inaccessible." Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 FR 34508-01, at 34523 (June 17, 2008). The DOJ also issued public guidance in 2009 requiring lowered, accessible counter spaces to be "free of equipment and merchandise to be usable." Department of Justice, Maintaining Accessible Features in Retail Establishments at 3 (June 2009), https://www.ada.gov/business/retail_access.pdf.

Here, Barajas alleges that the service counter was so covered with materials as to be wholly unusable. FAC ¶ 11. Unlike guests using the higher service counter, Barajas was required to conduct her transaction over these materials. Id. Barajas also alleges that this was not a temporary interruption due to maintenance or repairs, as is allowed under 28 C.F.R. § 36.211(b), as an "investigation" confirmed that this was the Hotel's ongoing practice. FAC ¶ 12. Barajas has sufficiently pleaded this violation.

### d. Application to the Hotel's Website

The "Reservations Rule" requires that a hotel's reservation information must "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. §

36.302(e)(1)(ii). "[T]here is little precedent interpreting 28 C.F.R. § 36.302(e)," Kennedy v. Siesta Inn & Suites, Inc., 828 F. App'x 658, 661 (11th Cir. 2020), but the Department of Justice, which promulgated the regulation, has put forth Title III Regulations 2010 Guidance and Section-by-Section Analysis ("2010 DOJ Guidance" or "Guidance") explaining the requirements in more detail, see 28 C.F.R. Pt. 36, App. A. Consistent with the rule that courts should defer to agencies' reasonable readings of genuinely ambiguous regulations, see Kisor v. Wilkie, 139 S. Ct. 2400, 2416 (2019), courts in the Ninth Circuit have relied on this guidance to determine what the relevant regulations actually require, see, e.g., Barnes v. Marriott Hotel Servs., Inc., No. 15-CV-01409-HRL, 2017 WL 635474, at *9 (N.D. Cal. Feb. 16, 2017).

The 2010 DOJ Guidance does not provide a definitive list of the information that must be included in a reservation system to meet accessibility standards under the ADA. But it does establish a general rule that the information required may vary with the accessibility of the described accommodations. For instance, the Guidance states that for older hotels "with limited accessibility features," the regulations likely require more detailed information. 28 C.F.R. Pt. 36, App. A. These hotels must provide, at a minimum, "information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms," and about "important features that do not comply with the 1991 Standards." Id. But "[f]or hotels that were built in compliance with the 1991 Standards," it may suffice

> to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices).

Id.

Barajas alleges that the Hotel's challenged elements do not comply with the 1991 Standards, and thus the relaxed requirements for hotels that comply with those standards do not apply. FAC ¶ 40. Ashford TRS contests this, alleging that the Hotel has rooms in compliance with the 1991 Standards. MTD FAC at 2. At this stage, the Court cannot resolve this factual dispute and must take Barajas's allegations as true. Thus, the Court assumes that the Hotel is not

in compliance with the 1991 Standards.

Under the DOJ Guidance, a hotel not compliant with the 1991 Standards must provide more information than the Hotel's website provides. Barajas alleges that the Hotel's website fails to describe its accessible features sufficiently for wheelchair users to assess whether a room would be accessible for them. FAC ¶ 27. The website provides a list of all available accessible features within the Hotel, but these features are not guaranteed to be present in a given "accessible" room. See RJN Exh. 2. Similarly, though the website includes a description of a specific accessible room, mentions a roll-in shower, and contains an image of an accessible shower, the webpage includes a warning that the image may not "reflect the specific accessible room type or room feature." Id. The website notes the existence of accessible routes and entrances, id., but does not describe them or any features that are not in compliance with the ADA standards, including the violations that Barajas alleges. Therefore, Barajas has sufficiently pleaded that the website violates the ADA.

Barajas has sufficiently pleaded ADA violations due to four room violations; an inaccessible sales counter; and a website violation. As with standing, Ashford TRS may have various factual arguments that defeat Barajas's ADA claims. But for now, those claims may go forward.

### C. California Unruh Civil Rights Act

A violation of the ADA is a per se violation of the California Unruh Civil Rights Act, see Cal. Civ. Code § 51(f), regardless of whether the discrimination was intentional, see Munson v. Del Taco, Inc., 208 P.3d 623, 625 (Cal. 2009); Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 847 (9th Cir. 2004).

Because Barajas has adequately alleged ADA violations, Barajas has adequately alleged Unruh Act violations. The Court thus denies Ashford TRS's the motion to dismiss the Unruh Act claim.

### IV. CONCLUSION

For the foregoing reasons, the Court denies Ashford TRS's motion to dismiss.

**IT IS SO ORDERED.**

Dated July 1, 2021



CHARLES R. BREYER
United States District Judge